# UNITED STATES DISTRICT COURT
## MIDDLE DISTRICT OF FLORIDA
### ORLANDO DIVISION

TRAVELERS CASUALTY AND SURETY
COMPANY OF AMERICA,

                Plaintiff,

v.                                           Case No:   6:14-cv-1636-Orl-31GJK

DESIGN BUILD ENGINEERS AND
CONTRACTORS, CORP., MICHAEL A.
THOMPSON, GEORGETTE WIGGAN-
THOMPSON, LBV HOLDINGS, LLC and
WESTMORELAND HOLDINGS, LLC,

                Defendants.

_____

## ORDER

        This matter is before the Court on the Plaintiff's Amended Motion for Preliminary Injunction

(Doc. 22) ("Motion") and supporting affidavits (Docs. 23-29, 31) as well as Defendants'

Memorandum in Opposition to the Motion (Doc. 43) and their supporting affidavits (Docs. 44-45).

Initially the Court heard arguments on December 9, 2014, following which, it entered two Orders

(Docs. 69, 70), but did not make a final ruling on the Motion. A further hearing was held on

December 19, 2014. Additionally before the Court is the response to the Court's Order to Show

Cause why Defendants LBV Holdings, LLC and Westmoreland Holdings, LLC should not be

enjoined from alienating certain parcels of real property (Doc. 69) and the Response thereto (Doc.

74).

## I.      Background

        This matter arises out of the construction of road projects in South Florida wherein Design

Build Engineers and Contractors, Corp. ("Design Build") was hired as a general contractor under

two government contracts. The two construction projects are referred to as the "FDOT Project" (with the corresponding "FDOT Bond") and the "Broward Project" (with the corresponding "Broward Bond").[1]

Travelers Casualty and Surety Company of America ("Travelers") was Design Build's surety and issued bonds on the condition that Design Build, its president Michael A. Thompson ("Thompson") and his wife, who is employed by Design Build, Georgette Wiggan-Thompson ("Wiggan-Thompson") (collectively the "Indemnitors") enter into indemnity agreements. The Indemnitors executed three General Agreements of Indemnity ("GAI"), one in 2007 and two in 2012[2] which contained the same provision material to this case. At base, the GAIs call for the Indemnitors to deposit with the Plaintiff collateral in an amount sufficient to cover losses or anticipated losses, as defined by the GAI, in the event that Travelers is required to respond to a default by Design Build under the government contracts. Travelers has issued a demand in the amount of $1,600,341.00 which Indemnitors have failed to post. Travelers also demanded the production of current financial statements from Defendants.

## A. FDOT Project

Design Build contracted with Trinity Highway Products, LLC ("Trinity") for labor, materials, and/or equipment related to the FDOT Project. However, Design Build found Trinity's performance lacking and withheld the final $409,066.92 due under the terms of their contract. On November 27, 2012, Trinity sued Design Build for the outstanding amount and attorney's fees incurred to enforce the terms of the contract. Travelers believed that Trinity's claim would

---

[1] Specific identifying information as to the projects is included in the Complaint. (*See* Doc. 1 ¶ 10).

[2] The GAIs were filed with the Complaint. (*See* Doc. 1-1 Ex. A-C)

ultimately prevail, that Design Build would be found liable, and that the litigation would result in a substantial attorney's fee award for which Travelers would be liable under the FDOT Bond.

In addition to the $409,066.92 payment, Trinity was asserting roughly a $600,000.00 claim for legal fees, which Design Build and Travelers thought was excessive. So, at the mediation in the case, they agreed to make the $409,066.92 payment, but leave the attorney's fee issue to be resolved by the court. The state court later awarded Trinity $989,671.89 in attorney's fees. Design Build reimbursed Travelers for nearly all of the Trinity payment, but has refused to pay the attorney's fee award. Thus Travelers seeks collateral in the amount of $989,671.89 with respect to the FDOT Bond.

Between the attorney's fees awarded by the Orange County Court, the small amount outstanding on the underlying contractual amount, and the attorney's fees from Travelers' counsel, Travelers claims it has incurred a net loss or anticipated loss of $1,367,064.45 which it has demanded pursuant to the GAIs. (Doc. 22 at 7).[3]

**B. Broward Bond**

With regard to the Broward Bond, Travelers also asserts it has received two payment bond claims, one for $62,816.00 and $49,141.85, and anticipates additional losses of $45,000.00 for completing the project and $75,000.00 for subsequent repairs. (*See* Doc. 29 ¶¶ 20-23). The anticipated loss largely stems from the fact that Broward County terminated the Design Build contract based on Design Build's failure to meet deadlines. (*See* Doc. 29-9). Broward County required Travelers to take over the project, and Travelers hired Design Build to complete the job. In

---

[3] Also related to the FDOT Bond, Travelers raises issues as to losses arising out of a contract between Design Build and Agricultural Land Services, Inc. ("ALS"). ALS filed suit and the parties ultimately settled for $40,000.00. While this represented a potential liability for Travelers, argument at the hearing demonstrated that Design Build has already paid this amount to ALS.

effect, Design Build has simply stepped back into its former role as a sub-contractor to Travelers. Provided it is allowed to continue in that capacity, Design Build argues that Travelers will incur no additional financial obligations.

With regard to the two payment claims, it is clear that travelers may be liable for those claims. Design Build points out that Broward County may ultimately reimburse such amounts once the subcontractors making the claims submit appropriate paperwork. While this may ultimately be true, the payment claims are currently outstanding. (*See* Docs. 29-7, 29-8).

Travelers asserts that Broward County has the power under the terms of the bond to require Travelers to terminate Design Build and secure an alternate subcontractor. As Travelers put it, Design Build is able to complete the work solely through the good graces of Broward County. Additionally, a report to Broward County indicates that repairs may be required on Design Build's concrete work—however the nature and extent of the repairs are not yet known. (*See* Doc. 29-10). If these two possibilities come to pass, Travelers estimates it will incur an additional $45,000.00 to secure an alternate contractor and $75,000.00 to make the repairs. Currently, Travelers has demanded a total of $231,957.00[4] based on the Broward Bond.

### C.  Procedural History

Travelers filed its five count Complaint in this Court on October 7, 2014, which essentially sought to prevent the Defendants from disposing of assets available to satisfy Defendants' obligations to post collateral. Travelers filed its initial Motion for Preliminary Injunction at the same time as the Complaint. On October 20, 2014, Travelers amended its Motion, asserting essentially the same legal arguments but adding a request for expedited hearing. On October 21, 2014, the Court

---

[4] Traveler's Motion lists a slightly different amount, totaling $231,319.53. (See Doc. 22 at 7 (listing costs incurred and anticipated from the Broward Bond)). Based on the ultimate ruling in this Order, this minor discrepancy is inconsequential.

set the Motion for hearing on November 12, 2014. Due to a scheduling conflict the hearing was postponed until December 9, 2014.

At the hearing on December 9, 2014 the Court entered two bench orders to sustain the status quo. (*See* Docs. 69, 70). These orders required Defendants to produce complete and accurate financial statements and enjoined them from transferring any assets until further Court order. Further, the Court allowed the parties to submit supplemental information and briefing on the maters germane to the Motion and set an additional hearing date for Friday December 19, 2014.

### D. Revelations Regarding Defendants' Property Including Real Estate and Bank Accounts

Following the onset of this lawsuit, the Indemnitors formed three LLCs: LBV Holdings, LLC ("LBV"), Westmoreland Holdings, LLC ("Westmoreland"), and Hanover Properties, LLC ("Hanover") (collectively "LLC Entities"). The Indemnitors transferred four unencumbered parcels of real property via quitclaim deed to LBV and Westmoreland. After the transfer, the four properties were put on the market. Two were sold for a total of roughly $1,000,000.00 which Thompson used to pay down the mortgage on his personal residence. The other two properties remain in the control of LBV and Westmoreland, and those defendants were enjoined from disposing of significant assets until further notice of the Court. (Doc. 69). Additionally, Travelers reported that Indemnitors transferred other encumbered properties to Hanover.

After Travelers learned that the Defendants had transferred parcels to LBV and Westmorland, it sought leave to amend the Complaint to add them. Travelers contends that these transactions, as well as the transfers to Hanover, are an attempt by Defendants to avoid posting the required collateral.

Following the Court's December 9, 2014 Order (Doc. 70) requiring Defendants to produce financial records to Travelers, Travelers learned that Defendants also had control of roughly

$250,000.00 in liquid assets in two Delaware bank accounts. Travelers asserts that those funds may also be used by Defendants to fulfill their obligations under the GAIs.

## II.     Standard

To warrant a preliminary injunction the Plaintiff must demonstrate "(1) a substantial likelihood of success on the merits; (2) that irreparable injury will be suffered if the relief is not granted; (3) that the threatened injury outweighs the harm the relief would inflict on the non-movant; and (4) that entry of the injunction would serve the public interest." *Schiavo v. Schiavo*, 403 F.3d 1223, 1225–26 (11th Cir.2005) (*citing Ingram v. Ault*, 50 F.3d 898, 900 (11th Cir.1995)). *See also Hammock ex rel. Hammock v. Keys et al.*, 93 F.Supp.2d 1222, 1226–1227 (S.D.Ala.2000). A preliminary injunction is an extraordinary remedy, and is not warranted unless the Plaintiff has clearly met the four required elements. *C.f., McDonald's Corp. v. Robertson*, 147 F.3d 1301, 1306 (11th Cir.1998); *Northeastern Fl. Chapter of the Ass'n of Gen. Contractors of Am. v. City of Jacksonville, Fla.*, 896 F.2d 1283, 1285 (11th Cir.1990).

## III.     Analysis

### A.  Preliminary Injunction Entitlement

Here, there appears to be no debate that the Indemnitors executed the GAIs, that Travelers issued a demand for collateral on losses and anticipated losses, that the GAIs provide that the Indemnitors post such collateral, and that the Defendants have failed to post the collateral. The GAIs plainly state:

> Indemnitors agree to deposit with Company,[5] upon demand, an amount as determined by Company sufficient to discharge any Loss or anticipated Loss. Indemnitors further agree to deposit with Company, upon demand, an amount equal to the value of any assets or Contract funds improperly diverted by any Indemnitor. Sums deposited with Company pursuant to this paragraph may be used by Company to pay such claim or be held by Company as collateral security against any Loss or

---

[5] "Company" means Travelers in the GAIs.

unpaid premium on any Bond. Company shall have no duty to invest, or provide interest on, the deposit. Indemnitors agree that Company would suffer irreparable damage and would not have an adequate remedy at law if Indemnitors fail to comply with the provisions of this paragraph.

(Doc. 1-1 ¶ 5 (repeated in all of the GAIs at pages 2, 9, and 13)). Paragraph ten of the GAIs is similarly clear as to the right to access the Indemnitors books and records, it states:

**10. Books. Records and Credit**: Indemnitors shall furnish upon demand, and Company shall have the right of free access to, at reasonable times, the records of Indemnitors including, but not limited to, books, papers, records, documents, contracts, reports, financial information, accounts and electronically stored information, for the purpose of examining and copying them. Indemnitors expressly authorize Company to access their credit records, including, but not limited to, account numbers and/or account balances from financial institutions. To the extent required by law, Indemnitors, upon request, shall be informed whether or not a consumer report has been requested by Company, and if so, of the name and address of the consumer reporting agency furnishing the report.

(*Id.* ¶ 10 (repeated in all of the GAIs at pages 2, 5, and 13)).

This case bears substantial similarity to another case before the Middle District of Florida involving Travelers seeking to enforce a collateral security clause via a motion for preliminary injunction. In *Travelers Cas. & Sur. Co. of Am. v. Industrial Commercial Structures, Inc.*, No. 6:12-CV-1294-ORL-28, 2012 WL 4792906 (M.D. Fla. Oct. 9, 2012), Judge Antoon stated:

In its preliminary injunction motion, Travelers seeks specific performance of the Collateral Security provision of the GAI.

. . . . .

[U]nder Florida law, "[a] decree of specific performance is an equitable remedy granted at the discretion of the trial court."*Invego Auto Parts, Inc. v. Rodriguez,* 34 So.3d 103, 104 (Fla. 3d DCA 2010)."It can be granted only when '1) the plaintiff is clearly entitled to it, 2) there is no adequate remedy at law, and 3) the judge believes that justice requires it.'"*Id.* (quoting *Castigliano v. O'Connor,* 911 So.2d 145, 148 (Fla. 3d DCA 2005)).

Travelers has established entitlement to preliminary injunctive relief requiring compliance with the Collateral Security provision. The vast majority of courts addressing this issue have awarded specific performance to sureties in similar circumstances, and all of the requisites of a preliminary injunction are satisfied here.

> As one federal court of appeals has succinctly explained, "[a] collateral security provision provides that once a surety . . . receives a demand on its bond, the indemnitor must provide the surety with funds which the surety is to hold in reserve. If the claim on the bond must be paid, then the surety will pay the loss from the indemnitor's funds; otherwise, the surety must return the funds to the indemnitor."*Safeco Ins. Co. of Am. v. Schwab,* 739 F.2d 431, 433 (9th Cir.1984). Moreover, "[s]ureties are ordinarily entitled to specific performance of collateral security clauses." *Id.* This is because " '[i]f a creditor is to have the security position for which he bargained, the promise to maintain the security must be specifically enforced.' " *Id.* (quoting *Marine Midland Trust Co. v. Allegheny Corp.,* 28 F.Supp. 680, 683–84 (S.D.N.Y.1939)).

*Id.*, at *2-3.

As in *Travelers v. Industrial Commercial Structures*, the Motion seeks to enforce the collateral security provision—a term of the GAI that the Indemnitors agreed to. If the Court did not enforce the provision, it would be rendered meaningless. First, there seems to be little debate that the GAIs require the posting of collateral and access to Indemnitors' financial records, that a demand was issued, and that it has not been posted. Thus, Travelers is likely to succeed on the merits.[6]

With respect to irreparable harm, the contract itself presumes irreparable harm and the Defendants conceded such in the agreement. (Doc. 1-1 ¶ 5); *see also Industrial Commercial Structures, Inc.*, No. 6:12-CV-1294-ORL-28, 2012 WL 4792906 at *3 ("[T]he nature of the injury in collateral security provision cases is the lack of collateralization while claims are pending, and nothing can remedy that injury after the fact."). A finding of irreparable harm for failure to post collateral and lack of access to financial records is also supported by Defendant's efforts to shield assets from Travelers lien claims by transferring assets to LLCs controlled by the Defendants.

While posting collateral might be unpleasant to Defendants, they will not be harmed by a requirement that they abide by the terms of their agreement. Conversely, Travelers would be harmed

---

[6] Defendant's only defense on the merits is that Thompson was pressured into the FDOT settlement. However, Thompson, who was represented by counsel at the mediation, cannot now simply complain that it was a bad deal.

if time were allowed to dissipate Defendant's assets before a judgment is entered. Thus, a balancing of the harms favors Travelers, as does the public interest in preserving the integrity of contract in commercial transactions.

Thus, Travelers has met its burden of showing that a preliminary injunction should issue requiring Defendants to post collateral in the amount of $1,479,022.00. This amount consists of the FDOT Bond, $1,367,064.00, and the Broward Bond for the amount of the payment demands, $111,958.00. Travelers has also met its burden regarding access to Indemnitors' financial books and records.

### B.  Whether *Grupo Mexicano* Precludes the Requested Relief

The Defendants argue that granting a preliminary injunction with regard to the amount claimed under the FDOT Bond would violate Supreme Court case law by allowing a plaintiff to preemptively freeze a defendants' assets prior to a judgment. (*See* Doc. 43 at 5-7). In effect, they argue that, while Travelers may have been entitled to have security posted prior to having an obligation to pay out on a bond claim, once a bond claim materializes Travelers can only recoup its losses through a breach of contract claim that is reduced to a judgment.

However, Indemnitors' argument ignores the plain language of the GAIs which entitles Travelers to recoup not only anticipated losses, but also existing losses. (*See* Doc. 1-1 ¶ 5). The GAIs define losses, as:

> **Loss** - All loss and expense of any kind or nature, including attorneys' and other professional fees, which Company incurs in connection with any Bond or this Agreement, including but not limited to all loss and expense incurred by reason of Company's: (a) making any investigation in connection with any Bond; (b) prosecuting or defending any action in connection with any Bond; (c) obtaining the release of any Bond; (d) recovering or attempting to recover Property in connection with any Bond or this Agreement (e) enforcing by litigation or otherwise any of the provisions of this Agreement; and (f) all interest accruing thereon at the maximum legal rate.

(Id. ¶ 1). This language in conjunction with paragraph five plainly includes bond obligations that

have materialized, like the obligation to pay attorney's fees from a lawsuit and judgment arising from the FDOT Bond.

Further, the Defendant's principal argument is based on *Grupo Mexicano de Desarrollo S.A. v. Alliance Bond Fund, Inc.*, 527 U.S. 308 (1999) which held, in essence, that *unsecured* creditors could not rely on the Court's general powers of equity to freeze a defendant's assets from being disbursed prior to a judgment. Not long after *Grupo Mexicano* was decided, the Northern District of Illinois addressed essentially the same argument that the Defendants are advancing here. The Northern District of Illinois held:

> Defendants contend that this case falls squarely under *Grupo* because, regardless of how it styles its request for relief, plaintiff ultimately seeks money from them. But the facts of this case differ from those of *Grupo* in significant ways. Plaintiff here does not seek only money damages; it seeks equitable relief and that relief is recognized under the law of suretyship. *See Western Cas. & Sur. Co. v. Biggs,* 217 F.2d 163, 165 (7th Cir. 1954) (court of equity will, at surety's request, seize funds due principal if surety can show debts are currently due, principal is unable to or refuses to pay them and, if they are not paid, surety will become liable). In addition, plaintiff is not simply an unsecured creditor of defendants seeking to freeze defendants' assets before judgment can be obtained. Plaintiff specifically bargained for a collateral security provision pursuant to which defendants contractually agreed to post collateral with plaintiff in the event plaintiff establishes a reserve against losses and demands such amount from defendants. Courts have granted specific performance in cases where indemnitors have failed to comply with collateral security agreements. *See Safeco Ins. Co. v. Schwab,* 739 F.2d 431, 433 (9th Cir. 1984); *Safeco Ins. Co. v. Dematos Enters., Inc.,* No. 02–C2899, 2003 WL 21293825, at *4 (E.D. Pa. Apr. 10, 2003). To do otherwise would deny a surety of the security position for which he specifically bargained. *See Safeco Ins. Co.,* 739 F.2d at 433.

*Travelers Cas. & Sur. Co. v. Ockerlund*, No. 04 C 3963, 2004 WL 1794915, at *2 (N.D. Ill. Aug. 6, 2004). As the Northern District of Illinois observed, a collateral claim from a surety is, in essence, a secured claim, and is distinguishable from the ruling in *Groupo Mexicano*.

### C.  Whether the GAIs Included Consideration for Wiggan-Thompson

The Defendants argue that Wiggan-Thompson received nothing of value in exchange for her promises under the terms of the GAI, and that the contract is unenforceable as to her for want of

consideration. However, the GAI executed by Wiggan-Thompson recites that she agreed to indemnify Travelers in consideration for obtaining the bonds for the construction work. (*See* Doc. 1-1). Under applicable Florida law, this is sufficient to establish consideration. *Kochan v. Am. Fire & Cas. Co.*, 200 So. 2d 213, 215 (Fla. Dist. Ct. App. 1967) (holding that where indemnity agreement stated that wife had beneficial interest in issuance of bonds for her husband's construction work she could not deny the express terms of the agreement by asserting a lack of consideration).

### D.  Order to Show Cause as to LBV and Westmoreland

Defendants have made a concerted effort to defeat Defendant's collateral rights including: 1) the creation of the LLC Defendants, which are controlled by Thompson and into which he transferred real estate that could be used to satisfy Traveler's demands; 2) the sale of two of the parcels and transfer of the proceeds of approximately $1,000,000.00 to the mortgage of Defendant's private residence in order to claim homestead exemption; and 3) the formation of a Connecticut corporation which was included as a member of LBV and Westmoreland in an effort to fraudulently divest this court of subject matter jurisdiction.[7]

Following argument and testimony in Court at the December 9, 2014 hearing about LBV and Westmoreland the Court entered an Order to Show Cause why those two entities should not be enjoined from alienating assets that may be utilized for Indemnitors to satisfy their obligations to Travelers. (Doc. 69).[8] LBV and Westmoreland responded to the Order to Show Cause on December

---

[7] Part of the basis for December 19, 2014 hearing was the Court's Order to Show Cause (Doc. 66) why LBV and Westmoreland's counsel should not be sanctioned based on a Motion to Dismiss (Doc. 60) that appeared to be filed in bad faith. The attorneys subject to the Order showed themselves to be forthright and honest to the Court and they were, themselves, provided with incomplete information which formed the basis of the Motion. Accordingly, the Order to Show Cause was discharged.

[8] The Order also maintained the status quo pending further order of the Court.

17, 2014. (Doc. 74). Further argument was heard on the matter on December 19, 2014, during which a third LLC, Hanover, which is also controlled by Thompson was revealed to the Court. Travelers asserted that it is also being used to receive property that might be used to secure Travelers. Defendants contended that, while Hanover did receive property, the property has no net value due to the outstanding mortgages.

LBV, Westmoreland, and Hanover have not shown cause why they should not be enjoined. All of these entities appear to be nothing more than holding companies for Indemnitors' property, all of which might be used to secure Travelers' claim. Accordingly, the LLC Entities will be enjoined from alienating or encumbering significant assets until further order of the Court. Defendants have requested a bond should a wrongful injunction issue. (Doc. 74). Because the companies appear to be no more than holding companies, and there is no indication that any have ongoing operations, Travelers will be required to secure three bonds in the amount of $5000.00, totaling $15,000.00 for the injunctions as to the LLC Entities.

It is, therefore

**ORDERED,** that Plaintiff's Motion for Preliminary Injunction is **GRANTED** as follows:

1)  Within 10 days following entry of this Order, Defendants shall post collateral in the amount of $1,479,022.00, pursuant to the terms of the GAIs (Doc. 1-1). This collateral represents net payments by Travelers on the FDOT Bond in the Amount of $1,367,064.00 and the anticipated payment of $111,958.00 on payment bonds for the Broward County Project. This collateral shall include:

    a.  The two (2) unencumbered properties held by LBV and Westmoreland,[9] and

---

[9] The addresses of the unencumbered properties held by LBV and Westmoreland are not readily apparent from the documents filed with the Court. If there is any dispute among the Parties as to which unencumbered properties held by LBV and Westmoreland are impacted by this Order,

   b. The Delaware bank accounts in the amount of $200,000.00. The remainder of these accounts are reserved for Defendants' use in the ordinary course of their family and business.

2) Travelers is hereby authorized to file a lis pendens with respect to the real estate. The bank accounts may be posted by transfer of the funds to be held by Plaintiff's counsel, in trust, until further order of the Court.

3) Travelers shall post cash or approved surety bonds in the total amount of $15,000.00 to compensate Defendants should it later be found that this injunction was improvidently issued.

4) Defendants shall, within ten (10) days, provide Travelers with reasonable access to their financial books and records so that Plaintiff may verify assets held by Defendants that may be subject to the contract's collateralization requirement.

5) Until further order of the Court, neither Defendants nor the three entities controlled by them (LBV, Westmoreland, and Hanover) shall alienate or encumber any significant assets,[10] including the unencumbered properties held by LBV and Westmoreland and the roughly $250,000.00 held in Defendants' Delaware bank accounts.

**DONE** and **ORDERED** in Chambers, Orlando, Florida on December 22, 2014.



GREGORY A. PRESNELL
UNITED STATES DISTRICT JUDGE

then the Court will accept filings with identifying information to issue a more specific Order.

[10] Significant assets exclude cash and other assets necessary for the regular conduct of the Defendants' business as well as cash and assets necessary for the regular maintenance and support of the Defendants' families.

Copies furnished to:

Counsel of Record
Unrepresented Party